Mr. Justice Hagner
delivered the opinion of the Court:
This is an action brought against the District of Columbia by Ellen Costello, a young woman who, in 1888, was a servant at the Riggs House. She testified that on the day of the accident she went down into the southwestern part of the city to see her mother, and returned about half past 10 o’clock at night. She 'got out of the F street car, on 14th street, just where that street crosses the south side of G street. She then undertook to walk from the car westwardly to the Riggs House, and fell into a.ditch between the car track and .the pavement. She then became insensible, and knew nothing further until she found herself in bed at the Riggs House. Her leg was broken, and a very serious injury resulted to her, the effects of which are such that one limb is four inches shorter than the other. The jury rendered a verdict for $7,500, with interest from a designated day, in her favor.
There were various exceptions taken at the trial, but there were really only two questions presented, as we conceive, which we need notice.
At the time spoken of the District of Columbia was engaged in laying a large water main down 14th street from a point beyond K street, south to the Avenue. They were working on this water main, in sections, one of which extended from F street to the south side of G street. The excavation was quite near to the western pavement, and was at least six feet deep.
It appears from the intelligent testimony of Captain Lusk, who represented the District upon the work and had general direction of it, that all the dirt was thrown on the west side of the excavation, almost in contact with the pavement; and this was regarded as a sufficient barricade upon that side. The only barricade on the eastern side of the ditch consisted of a line of pipes, about thirty inches in diameter, which were to be placed in the ditch. These pipes were placed along in close connection from F street up to a point about 18 feet from the south side of G street. There the pipes *510 seem to have given out, and thence up to the south side of G ’street there were no pipes at all. The only pretence upon the part of the District of any barricade there, is that some barrels of cement were placed at intervals along this space, with boards extending from one barrel to the other, and with heavy pieces of concrete broken from the pavement placed on top of the boards to keep them in position; and that red lights, indicating danger, were placed along there, as well as along the whole line. There is some evidence there was a barricade across the north end of the excavation, consisting of a plank laid across two barrels; and the northern end of the ditch was crossed by a little bridge for foot passengers, •consisting of one or two planks. But there is really no .actual evidence of any barricade at all for that 18 feet, although the fact that Captain Lusk directed his agents to place such a barricade 'there is undoubted.' There was an •electric light at the corner, but the testimony is that the night was dark and rainy, and that no light was burning there at the time of the accident.
• The person whose special -business it was to watch this place is dead; and, it is said that two others who- were more or less engaged in close .connection with this work, are also •dead; which will account for the scarcity of testimony on the .subject.
Two witnesses employed at Mr. Small’s florist establishment, right across the street, say that they were quite familiar with the place; that they crossed there several times on the •day of the accident, and at no time was there a barricade there during that day. A policeman who was examined, says he complained of the unprotected situation, and protested it was not proper to leave' the excavation in that condition.
Upon the whole case we have no hesitation in saying the jury were perfectly justified in finding there was negligence on the part of the corporation. In our opinion, it was a case of most reprehensible negligence. Instead of one poor girl being maimed for life, dozens of persons might have *511 been injured that Sunday night; and if there were churches in the immediate vicinity, there was nothing to prevent any number of persons from falling into this excavation.
As soon as the accident occurred and people began to gather at the place, planks were put up along the ditch. One witness for the defendant testified that the planks he saw there the next morning were not the planks to which he alluded as having been put there about 5 o’clock on the previous evening; that the first set of planks were much thicker than those found there the next morning: a statement which conclusively showed, either that no planks at all had been placed there the night before, or that the alleged watchmen had neglected their duty.
The case was tried upon instructions which were almost identical with those granted in' the case of McPherson against the District of Columbia, reported in 18 D. C., 564. In that case a girl crossing the street diagonally from the southeast comer of the postoffice, fell into a ditch which had been made by a heating company, having permission from the District authorities to make excavations in the streets to lay its pipes. The defence by the District was, that the heating company had maintained a sufficient barricade up to a short time before the girl fell, but that in some way or other it had been removed; and that the burden was upon the plaintiff to show the defendant had notice of its removal. The court rejected this contention, and instructions were given, upon which those in the present case were framed.
This question was also considered in the case of District of Columbia vs. Woodbury, 136 U. S., 450. In that case, a person passing along by Riggs Hotel, on this same G street, stepped on the edge of a mortar board which had been placed over a manhole leading down through the pavement into the boiler room. The board tilted with him; he fell, and he was seriously injured for life. The defence was there interposed that some one must have removed the mortar board, and that after the builders had put an obstruction there, their duty was discharged and it was not incum *512 bent upon them to employ a watchman to remain by it, to prevent its removal. The court held the builders, at their peril, should see to it that they had put a perfectly efficient protection at the place in the first instance; and that the mortar board, which was capable of being easily displaced by passers by, was not such sufficient protection.
As a matter of course, it is utterly impossible there could have been an efficient barricade at this place when the plaintiff fell into the excavation. If there had been she could not have gotten in the ditch, unless she had climbed over or under the barricade, or pushed it away; and there is not the slightest evidence of any such act.
It seems to us the instructions of the 'court are not liable to any of the objections made against them.
There is really only one objection in the case, and 'that is as to the form of the verdict. The jury, says the record, retired, and subsequently returned their verdict against the defendant for $7,500, with interest from May 27, 1889.
Exactly where the jury could have gotten the date of May 27, 1889, does not appear. It was neither the date of the accident nor of the impetration of the writ. This is an action of tort, and the question arises whether we can affirm a judgment rendered in that form in an action of that description.
The question is somewhat akin to one which has been litigated here more than once, whether a judgment m tort bears interest from its rendition in this jurisdiction. We have held, and have thus far seen nothing to change our opinion, that interest does run properly upon all judgments, in this jurisdiction, whether they are rendered in actions of contract or actions of tort. We have nowhere decided, nor have we seen any authority to justify us in deciding, that the jury had the right, in returning their verdict in an action of tort, to select an antecedent day at their discretion, and say that interest should run from that day upon the amount of their verdict.
Sedgwick, in his work on Damages, Vol. 1, section 320, discusses the question of interest on verdicts in cases of *513 tort, and after showing that in certain cases interest may be recovered in such actions, says: “The fact that the demand is unliquidated has been shown to be insufficient to exclude interest, and there is nothing in the mere form of the action which renders it unreasonable that interest should be given. Nevertheless, it is in the region of tort that we find the clearest cases for the disallowance of interest. There are many actions of tort which are not brought to recover a sum of money representing a property loss to the plaintiff; and it is frequently said broadly that interest is not allowed in such actions. It is certainly not allowed in such cases as assault and battery, or for personal injury by negligence, libel, slander, seduction or false imprisonment. But where the tort is of a sort to deprive the plaintiff of property, although not (as in the case of conversion) taking away his title to any specific thing, interest is frequently and perhaps .generally allowed.”
In the Western & Atlantic R. R. Co. vs. Young, 81 Ga., 397, the court below, on the request of the plaintiff, told the jury that in rendering their verdict, they might return interest upon the amount which they found. On appeal it was held this instruction was wrong; and one of the reasons assigned as having some weight, — though its force may be questioned — was that the principle of tender applied equally to all cases; and a defendant has the right to save interest and costs by tendering the amount due into court. But as it would not be practicable to tender ,any particular sum or the amount due, in an action for unliquidated datqages for a personal injury, inasmuch as it would be impossible to predict what sum the jury would award, if they had the right to return .interest on their verdict from an arbitrary date the defendant’s legal right to make the tender would be 'impaired.
After careful consideration, we think the judgment below cannot be-.allowed to stand in its present form. It is quite a generous verdict, but with that we have no complaint to make under the circumstances. It is rather unfortunate that *514 the negligent officials who bring these troubles and sufferings upon citizens, may perhaps go scot free, as not being responsible to pay any portion of the damages. They suffer vicariously through the property holders, the Justices among others.
The next question is whether we shall reverse the ruling below, or whether we can modify the verdict, by declaring that although the verdict in its present form was unauthorized, yet if the plaintiff will enter a remittitur of the interest, we will refrain from granting a new trial: and as authority to do this has been questioned, we have examined this question anew without relying only upon our own practice. We have no difficulty in saying the appellate court has this power. In 1 Sellon, 482, the author says, a remittitur may be entered after error brought, where the verdict exceeds damages claimed.
In Bank of Commonwealth of Kentucky vs. Ashley, 2 Peters, 327, the Supreme Court carefully examined this question, and decided in favor of its authority as an appellate court to adopt this course, following the case of Arcambel vs. Wiseman, 3 Dallas, 306. In the latter case a counsel fee had been improperly included in the judgment, and the Supreme Court required it to be released by a remittitur. In Russell vs. Place, 9 Blatchford, 173, a similar ruling was made. See also Sinclair vs. Railroad Company, MacArthur & Mackey, 20; Sedgwick on Damages, section 1322.
In the more recent case of Flannery vs. B. & O. R. R. Co., 4 Mackey, 111, this court took the same course; and in that case .they exacted a remittitur of the larger part of the verdict, under penalty of granting a new trial

In the present case we give notice, we will grant a new trial unless there is a remittitur for this interest. When such remittitur is entered, we will affirm the judgment below.